**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 24 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| INVENERGY THERMAL LLC; GRAYS HARBOR ENERGY, LLC, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> LAURA WATSON, in her official capacity as Director of the Washington State Department of Ecology, <br><br> Defendant-Appellee. | No. 23-3857 <br><br> D.C. No. 3:22-cv-05967-BHS <br><br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted November 13, 2024
San Francisco, California

Before: S.R. THOMAS and MILLER, Circuit Judges, and MOLLOY, District Judge.**

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*     The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

Plaintiffs-Appellants Invenergy Thermal LLC and Grays Harbor Energy LLC (collectively "Appellants") own an electricity-generating natural gas power plant in Washington State. In 2022, they sued Defendant-Appellee Laura Watson, in her official capacity as Director of the Washington State Department of Ecology (the "State"), challenging a provision of Washington's Climate Commitment Act that provides no-cost emissions allowances to electric utilities but requires non-utility owners, like Appellants, to purchase such allowances for their power plants. *See* Wash. Rev. Code § 70A.65.120. Appellants allege that the Act's distribution of no-cost allowances violates the dormant Commerce Clause and the Fourteenth Amendment's Equal Protection Clause. The district court granted the State's motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), after sua sponte finding that Appellants lacked standing. We have jurisdiction under 28 U.S.C. § 1291 and review the district court's decision de novo. *See Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 722 (9th Cir. 2024). We affirm, but not on standing grounds.

I

While the State does not defend the district court's standing decision, standing is jurisdictional and must be addressed. *See B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing."). Appellants have

standing. The conduct at issue "threatens to cause financial injury" to Invenergy Thermal LLC, the parent company of Grays Harbor Energy LLC, "by illegally reducing the return on [its] investments in [Grays Harbor] and by lowering the value of [its] stockholdings." *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). Grays Harbor Energy LLC also has standing because even if it qualifies as an in-state entity, "cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997); *see Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 265–67 (1984) (holding that in-state liquor wholesalers had standing to raise a dormant Commerce Clause challenge to a Hawaii tax regime exempting certain alcoholic beverages produced in-state from liquor taxes).

Ultimately, while the district court erred by addressing standing without giving the parties an opportunity to be heard, *see Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1060 (9th Cir. 2023) ("Given the due process and fairness concerns presented, a district court generally must provide the parties with adequate notice that it is contemplating invoking a particular procedural device *sua sponte*."), and by proceeding to the merits despite its finding of no standing, *see Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) (per curiam) ("[A] court that lacks jurisdiction 'is powerless to reach the merits.'" (quoting *Fleck & Assocs., Inc. v. Phoenix, City of,*

*an Ariz. Mun. Corp.*, 471 F.3d 1100, 1106–07 (9th Cir. 2006))), standing exists and we affirm on the merits.

II

Appellants fail to plead a viable dormant Commerce Clause claim because the Climate Commitment Act's provision of no-cost allowances to electric utilities neither discriminates against interstate commerce, *see Tracy*, 519 U.S. at 310, nor imposes an impermissible burden on such commerce, *see Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127 (1978); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

First, the Act does not "discriminate[] against out-of-state entities on its face, in its purpose, or in its practical effect" because electric utilities and independent power plant owners like Appellants are not similarly situated. *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013). "[W]hen the allegedly competing entities provide different products . . . there is a threshold question whether the companies are indeed similarly situated for constitutional purposes." *Tracy*, 519 U.S. at 299. If the entities in fact "serve different markets, and would continue to do so even if the supposedly discriminatory burden were removed[,] . . . eliminating the . . . regulatory differential would not serve the dormant Commerce Clause's fundamental objective of preserving a national

market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors." *Id.*

Washington utilities are not similarly situated to Appellants because they primarily serve a separate, captive retail market by distributing power to consumers, even though they also compete with Appellants in the noncaptive market of wholesale electricity generation. *See id.* at 301, 310 (concluding that utilities and natural gas marketers in Ohio were not similarly situated because the latter did not serve the core market of captive retail users). While Washington utilities have the discretion to apply their no-cost allowances to cover the compliance obligations of their power plants, *see* Wash. Admin. Code § 173-446-420(2)(a), the amount of no-cost allowances provided under the Act is tailored to the amount of electricity that a utility supplies to consumers in the captive retail market, *see* Wash. Rev. Code § 70A.65.120(2); Wash. Admin. Code § 173-446-230(2). Thus, any power generated by a utility-owned plant that exceeds this amount—power that can then be sold on the wholesale market in which Appellants operate—does not increase the number of no-cost allowances awarded to that utility. To modify this scheme "could subject [utilities] to economic pressure that in turn could threaten the preservation of an adequate customer base to support continued provision of bundled [electricity] services in the captive market." *Tracy*, 519 U.S. at 309. *Tracy* therefore dictates the outcome here, distinguishing this

case from *NextEra Energy Cap. Holdings, Inc. v. Lake*, a Fifth Circuit case relied on heavily by Appellants that did not involve the separate service provided by utilities in a captive market. *See* 48 F.4th 306, 320 (5th Cir. 2022).

　　Second, Appellants fail to allege a viable dormant Commerce Claim under *Pike*. Even assuming that a nondiscriminatory *Pike* claim remains viable, *see Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 379 (2023), "interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another," *Exxon*, 437 U.S. at 127. Rather, the Supreme Court has noted that it "has only rarely held that the Commerce Clause itself pre-empts an entire field from state regulation, and then only when a lack of national uniformity would impede the flow of interstate goods." *Id.* at 128. Indeed, contrary to Appellants' characterization, the Court has declined to hold that the incidental effect of mere state regulation on the interstate wholesale energy market is, on its own, a substantial burden on interstate commerce. *See Ark. Elec. Co-op. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 395 (1983). Because the Commerce Clause "protects [neither] the particular structure [n]or methods of operation in a retail market," the fact that Appellants may have to alter their operations to either pay for allowances to offset their carbon emissions or reduce their carbon emissions does not "impermissibly *burden*[] interstate commerce." *Exxon*, 437 U.S. at 127.

III

Appellants' final claim arises under the Equal Protection Clause of the Fourteenth Amendment. As discussed above, Appellants are not similarly situated to Washington's electric utilities in this context, which forecloses their equal protection claim. Additionally, Appellants fail to plausibly negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618, 630 (9th Cir. 2024) (quoting *Olson v. California*, 104 F.4th 66, 77 (9th Cir. 2024)). The classification and differential treatment rationally reflect Washington's interest in balancing the rising cost of energy against the State's desire to reduce greenhouse gases. While the State recognizes that electricity costs will still go up under its no-cost allowance regime, that does not undermine the State's effort to mitigate those rising costs or fight climate change. Even taking as true Appellants' allegation that the Act neither reduces costs nor greenhouse gases, the no-cost allowances are explicitly provided to avoid duplicating the carbon reduction program that separately applies to utilities under the Clean Energy Transformation Act. *See* Wash. Rev. Code § 70A.65.120(1). Accordingly, the district court correctly concluded that Appellants' claim fails as a matter of law because the challenged classification serves legitimate state interests.

IV

"Denial of leave to amend is reviewed for an abuse of discretion." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 655 (9th Cir. 2017) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011)). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Id.* (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)). Amendment need not be permitted when it would be futile—that is, when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Id.* (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Because additional facts would not undermine the conclusions reached above, we find no abuse of discretion here.

**AFFIRMED.**